Filed 1/11/23  In re T.P. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| In re T.P., a Person Coming Under the Juvenile Court Law. |  |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,  Plaintiff and Respondent,  v.  J.B.,  Defendant and Appellant. | F084522  (Super. Ct. No. JD141278-00)  **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Susan M. Gill, Judge.

Elaine Forrester, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Kelli R. Falk, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Peña, J. and Snauffer, J.

Appellant J.B. (mother) is the mother of T.P. (the child), who is the subject of a dependency case. Mother challenges the juvenile court's order terminating her parental rights at a Welfare and Institutions Code[1] section 366.26 hearing. Mother contends the juvenile court committed reversible error by failing to find that D.P. was the child's biological father. Based upon that argument, she further argues that the juvenile court failed to make proper findings and inquiry under the provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA)). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In August 2020, the child was taken into protective custody, shortly after her birth, as a result of mother's ongoing issues with mental illness, substance abuse, and domestic violence. Mother had an open dependency case involving the child's five older siblings (collectively "the siblings"). At the hospital, mother indicated the child's alleged father, D.P., would not be involved in the child's life, and she denied having contact information for him. Mother and D.P. had a history of domestic violence with D.P. identified as the perpetrator, and she denied being in a relationship with D.P. for the last two years. A social worker attempted to locate D.P., but she was not successful at contacting him at his last known address and phone number.

The department filed a petition alleging the child was at substantial risk of suffering serious physical harm under section 300, subdivisions (b) and (j). The petition identified D.P. as the child's alleged father without any allegations pertaining to him.

At the initial detention hearing held on August 25, 2020, mother was present while D.P. was not. Mother testified regarding paternity and identified D.P. as the father of the child. D.P. was not married to mother, and he did not sign any paperwork to be placed

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]    The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

2.

onto the birth certificate. Mother also testified that D.P. told her and others that he was the child's father. She was not aware of any court rulings declaring D.P. to be the child's father and he was not ordered to pay child support for the child. D.P. never lived with the child, and mother denied that there were other possible fathers. All counsel declined the juvenile court's request for any follow-up questions of mother regarding paternity.

Mother completed a Parental Notification of Indian Status form (ICWA-020), which indicated she had no Indian ancestry. The juvenile court found ICWA was not applicable as to mother. The detention hearing was continued at the request of D.P.'s counsel. D.P. was not present for the continued hearing, and his counsel submitted on detention and the reasonable efforts to provide him notice. The juvenile court reserved the issues of paternity and ICWA, and it found reasonable efforts to provide notice to D.P. were not successful. The juvenile court ordered the child detained from mother and set a combined jurisdiction and disposition hearing on October 27, 2020.

The social study prepared for the jurisdiction hearing recommended that the allegations in the original petition be found true. D.P.'s whereabouts remained unknown, and the child's birth certificate did not list any person as the child's father. At the initial jurisdiction and disposition hearing, D.P. was not present, and the juvenile court granted his counsel's request for a continuance due to untimely notice. A paralegal with the department located D.P. at a local grocery store to provide him notice of the continued jurisdiction and disposition hearing. D.P. indicated he was homeless and provided the maternal grandmother's residence as his mailing address. The paralegal also provided D.P. with contact information for his attorney and court worker.

After an additional continuance, the juvenile court proceeded to find the allegations in the original petition true at the hearing held on February 22, 2021. D.P. was not present. The disposition portion of the hearing was continued for the department to file a report.

The department's report for the disposition hearing, dated March 22, 2021, recommended that the child be removed from mother's custody, mother not be provided family reunification services pursuant to section 361.5, subdivision (b)(10), and a section 366.26 hearing be set. It was also recommended that D.P. not be provided family reunification services because he was merely an alleged father who did not seek to establish paternity in the case. The report noted that D.P. claimed possible Blackfeet and Cherokee Indian ancestry in the past. D.P. was identified as the presumed father of three of the child's siblings, and his mother, C.P., lived in Bakersfield. The report provided a detailed history of the siblings' prior dependency proceedings, and the juvenile court previously found that ICWA was not applicable to the siblings. D.P.'s family reunification services were terminated as to two of the siblings in November 2018, and he was denied family reunification services as to another sibling pursuant to section 361.5, subdivision (b)(10) in April 2019.

A contested disposition hearing was held on April 29, 2021, after an additional continuance, where D.P. also failed to appear. Mother testified in support of her request to be provided family reunification services, and D.P.'s counsel submitted in his absence. The juvenile court ordered the department to provide mother family reunification services, and it declined to provide reunification services to father based upon his status as an alleged father. Father was authorized to have monthly visits with the child for one hour. A 12-month review hearing was set for October 19, 2021.

The department prepared a report for the 12-month review hearing, which recommended that mother's family reunification services be terminated. During the reunification period, law enforcement responded to mother's home on multiple occasions, and one of the incidents involved domestic violence between mother and D.P. D.P. stayed at mother's home often and there had been multiple incidents in the past. At the 12-month review hearing held on October 19, 2021, mother and father were not present. The juvenile court terminated mother's reunification services and set a section 366.26

hearing. A notice of intention to file a writ petition was mailed to mother and father, and neither parent filed a writ petition.

In advance of the section 366.26 hearing, the department made numerous attempts to locate D.P. to provide him with notice. A department paralegal contacted D.P.'s aunt, who was only able to provide the name of a social media profile for D.P. D.P.'s aunt indicated he had no family in Bakersfield, and she had no idea how to contact him. The paralegal sent messages to the social media profile provided, but D.P. did not respond. The paralegal also contacted the child's maternal grandmother at her residence in an effort to locate D.P. The maternal grandmother indicated only she and her mother lived at the home and they had not had any contact with D.P. in almost two years.

A section 388 petition was filed by mother on April 4, 2022, requesting return of the child on a plan of family maintenance. The report for the section 366.26 hearing recommended that the parental rights of mother and D.P. be terminated, and the child be freed for adoption. The child remained placed in the same resource family home with three of her siblings throughout the case. The ICWA section of the report indicated that the department had received no additional information regarding ICWA. D.P. was referred to as the child's alleged father, and the department was continuing to complete a diligent search for him. D.P. did not attend any visits with the child, and there was no documented relationship between D.P. and the child.

On May 6, 2022, a contested section 366.26 hearing was held in combination with a hearing on mother's section 388 petition for modification. Mother was present and testified, and D.P. was not present. After hearing mother's testimony and argument of counsel, the juvenile court denied mother's section 388 petition and terminated the parental rights of mother and D.P.

## DISCUSSION

Mother contends the juvenile court's finding that ICWA did not apply was not supported by sufficient evidence because the juvenile court did not designate D.P. as the

5.

child's biological father and make an ICWA finding regarding the child's paternal lineage. Mother also argues that D.P.'s past disclosure of Blackfeet and Cherokee ancestry in the siblings' cases provided a reason to believe the child may be an Indian child such that the duty of further inquiry was triggered.

### A. Legal Principles

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224, subd. (e)). An " 'Indian child' " is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

In every dependency proceeding, the department and the juvenile court have an "affirmative and continuing duty to inquire whether a child … is or may be an Indian child …." (Cal. Rules of Court, rule 5.481(a); see § 224.2, subd. (a); *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.) The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child." (§ 224.2,

subd. (a).)  Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§§ 224.2, subd. (b), 306, subd. (b).)  The juvenile court has a duty at the first appearance of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child."  (§ 224.2, subd. (c).)  The court must also require each parent to complete form ICWA-020.  (Cal. Rules of Court, rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the department or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient information to determine that there is reason to know that the child is an Indian child." (§ 224.2, subd. (e).)  As recently clarified by the Legislature, a "reason to believe" exists when the juvenile court or department "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."  (Id., subd. (e)(1).)

If there is a reason to believe an Indian child is involved, the juvenile court or the department "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable."  (§ 224.2, subd. (e).)  Further inquiry includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended family members," and contacting the Bureau of Indian Affairs (BIA), the State Department of Social Services, and the tribes and any other person who may have information.  (§ 224.2, subd. (e)(2)(A)–(C).)

The final duty component arises when the court or department has " ' "reason to know" ' " the child is an Indian child.  (In re D.F., supra, 55 Cal.App.5th at p. 567.)  A "reason to know" exists if one of the following circumstances is present:  "(1) A person having an interest in the child … informs the court that the child is an Indian child[;]  [¶] (2) The residence … of the child [or] the child's parents … is on a reservation or in an Alaska Native village[;]  [¶]  (3) Any participant in the proceeding … informs the court

7.

that it has discovered information indicating that the child is an Indian child[;] [¶]

(4) The child … gives the court reason to know that the child is an Indian child[;] [¶]

(5) The court is informed that the child is or has been a ward of a tribal court[;] [or] [¶]

(6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(1)−(6).)

If the juvenile court makes a finding that proper and adequate further inquiry and due diligence have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that ICWA does not apply, subject to reversal if the court subsequently receives information providing reason to believe the child is an Indian child. If the court receives such information, it must direct the social worker or probation officer to conduct further inquiry. (§ 224.2, subd. (i)(2).)

## B. Standard of Review

Where the juvenile court finds ICWA does not apply to a child after completion of an initial inquiry, "[t]he finding implies that … social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.) We review the juvenile court's ICWA findings for substantial evidence. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) We must uphold the juvenile court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446.) The appellant "has the burden to show that the evidence was not sufficient to support the findings and orders." (*Ibid*.)

## C. Analysis

"Juvenile courts and child protective agencies have 'an affirmative and continuing duty to inquire' whether a dependent child is or may be an Indian child." (*In re Michael V.* (2016) 3 Cal.App.5th 225, 233; see also *Isaiah W.*, *supra*, 1 Cal.5th at pp. 9–11; § 224.2, subd. (a).) An "Indian child" is "any unmarried person who is under age

8.

eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see also § 224.1, subd. (a) [adopting federal definition of " 'Indian child' "].)

The necessity of a biological connection is evident in ICWA's definition of "Indian child" and "parent." In the present case, mother has denied that she has Indian ancestry and because she makes no claim of error regarding the department's inquiry of her own ancestry, ICWA can only apply through the child's alleged father, D.P. Therefore, it must be determined whether there was sufficient evidence that D.P. is the child's biological father to require an investigation of his previously claimed Indian ancestry.

ICWA's definition of " 'parent' " includes "any biological parent or parents," but expressly excludes unwed fathers "where paternity has not been acknowledged or established." (25 U.S.C. § 1903(9); see also § 224.1, subd. (c) [adopting federal definition].) The statute does not specify how paternity may be "acknowledged or established" for purposes of applying ICWA, and the BIA declined to adopt a federal standard when it issued ICWA regulations in 2016. Instead, the BIA's comments accompanying the final regulations explained as follows:

> "The final rule mirrors the statutory definition and does not provide a Federal standard for acknowledgment or establishment of paternity. The Supreme Court and subsequent case law has already articulated a constitutional standard regarding the rights of unwed fathers, see *Stanley v. Illinois*, 405 U.S. 645 (1972); *Bruce L. v. W.E.*, 247 P.3d 966, 978–979 (Alaska 2011) (collecting cases)—that an unwed father who 'manifests an interest in developing a relationship with [his] child cannot constitutionally be denied parental status based solely on the failure to comply with the technical requirements for establishing paternity.' *Bruce L.*, 247 P.3d at 978−979. Many State courts have held that, for ICWA purposes, an unwed father must make reasonable efforts to establish paternity, but need not strictly comply with State laws. *Id.* At this time, the Department does not see a need to establish an ICWA-specific Federal definition for this term." (Indian Child Welfare Act Proceedings 81 Fed.Reg. 38796 (June 14, 2016).)

9.

There is no indication in the present record that D.P. has "manifest[ed] an interest in developing a relationship" with the child such that he cannot constitutionally be denied parental status. Mother's reliance upon evidence that she believed D.P. was the only possible father, her request that D.P. attend the child's birth, the child's sharing his surname, and the juvenile court authorizing monthly visits between D.P. and the child is insufficient to establish father's status as either a biological or presumed father of the child. In fact, it is not disputed that mother initially claimed D.P. would not be a part of the child's life, D.P. did not attend the child's birth, and he never appeared in the dependency proceedings to seek visitation or custody of the child. There is no evidence that D.P. ever met the child or made any efforts to establish himself as the child's father. Accordingly, D.P. does not have a constitutionally protected interest in a relationship with the child.

Furthermore, D.P. has not acknowledged or established paternity in any of the ways prescribed by statute. (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 708 (*Daniel M.*) [because ICWA does not provide a standard for the acknowledgment or establishment of paternity, "courts have resolved the issue under state law"].) The framework for paternity determinations in California is set out in several provisions of the Welfare and Institutions Code and the Family Code. D.P. did not seek a judgment of paternity, sign a voluntary declaration of paternity, admit parentage in a pleading, or submit to genetic testing. (See Fam. Code, §§ 7636, 7571, 7554.) He is not married to mother, and he never received the child into his home or held her out as his child. (Fam. Code, § 7611.) To the contrary, he has never made an appearance of any kind in these proceedings despite being served with notice.

Despite D.P.'s failure to meet any of the statutory conditions for acknowledging or establishing paternity, mother contends D.P.'s claims of Cherokee and Blackfeet ancestry in prior proceedings triggered ICWA's duty of further inquiry because D.P. allegedly "acknowledged" his paternity to mother. However, mother cites no authority, and we are

10.

not aware of any, suggesting that an informal acknowledgment of paternity to a third party establishes D.P. as a "parent" for purposes of ICWA.

In response, the department primarily relies on the case of *Daniel M.*, which held that an alleged father lacked standing to challenge ICWA compliance. That case involved an appeal by a father who claimed some Indian heritage, but who had not yet completed paternity testing. The court had asked the alleged father to bring the ICWA issue to its attention if he established biological paternity. (*Daniel M.*, *supra*, 110 Cal.App.4th at p. 706.) Father appealed the termination of parental rights, arguing that ICWA's notice requirements were violated. The appellate court dismissed father's appeal, explaining: "The ICWA defines 'parent' as 'any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom.' (25 U.S.C. § 1903(9).) The ICWA expressly excludes from the definition of 'parent' an 'unwed father where paternity has not been acknowledged or established.' (*Ibid.*)" (*Daniel M.*, at p. 708.) Because paternity had neither been acknowledged or established, the alleged father lacked standing to raise ICWA compliance issues. (*Id.* at pp. 708–709.)

Here, any information D.P. previously provided regarding possible Indian ancestry is not relevant in these proceedings absent evidence that his paternity was acknowledged or established. (*Daniel M.*, *supra*, 110 Cal.App.4th at pp. 707–708; compare *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1166 & fn. 5 [ICWA inquiry and notice requirements triggered because the minor's birth certificate designated father as the biological father].) Similarly, the department had no obligation to interview D.P.'s relatives because his relatives were not "extended family members" within the meaning of ICWA.

In sum, mother's appeal is premised on the requirements of ICWA being triggered by D.P.'s prior disclosure of Indian ancestry because she identified D.P. as the child's biological father. However, she has failed to establish that the juvenile court erred in

11.

determining that D.P. was an alleged father, or that the department neglected a duty to establish D.P.'s paternity.  Thus, the requirements of ICWA were not triggered and the juvenile court's order terminating mother's parental rights must be affirmed.  (*In re E.G.* (2009) 170 Cal.App.4th 1530, 1533.)

## DISPOSITION

The order appealed from is affirmed.